313 So.2d 6 (1975)
Gene WARREN et al.
v.
STATE of Louisiana, DEPARTMENT OF LABOR et al.
No. 10227.
Court of Appeal of Louisiana, First Circuit.
May 19, 1975.
*7 G. Michael Pharis, Baton Rouge, for plaintiff-appellant Warren.
Wayne P. Bourg, Morgan City, for plaintiffs-appellants, George J. Reynolds, Atchafalaya Labor Crews and Richard Viator.
Michael C. Barron, Baton Rouge, for defendant-appellee.
Before LOTTINGER and COVINGTON, JJ., and BAILES, J. Pro Tem.
BAILES, Judge Pro Tem.
Under the authority of LSA-R.S. 23:11, the Louisiana Department of Labor issued a subpoena and subpoena duces tecum to Rayne & Keller of Louisiana, Inc. (erroneously designated as Payne & Keller of Prairieville, La.), and to Gene Warren, the corporation's office manager.[1] The subpoenas sought attendance at and production of evidence before a representative *8 of the Commissioner of Labor on October 21, 1974, at a hearing to inquire into possible violations of LSA-R.S. 23:898 through 902, 903 and 904, and more specifically in regard to employment of workers by Payne & Keller between the dates of July 1,1974, and October 20, 1974, at the premises of Cabot Corporation, Canal Plant, Franklin, St. Mary Parish, Louisiana.
Similar subpoenas were directed to Atchafalaya Labor Crews, Inc. (erroneously designated as Atchafalaya Labor Crews of Morgan City, Louisiana), and its president, George J. Reynolds, and also to Offshore Service, Inc. and Richard Viator.
Gene Warren and Payne & Keller filed a petition with the Nineteenth Judicial District Court for East Baton Rouge Parish, pursuant to which a temporary restraining order issued enjoining the proposed investigation. Identical petitions were filed by Atchafalaya Labor Crews, Inc. and George J. Reynolds, and by Offshore Service, Inc. and Richard Viator, under which the same temporary relief was granted. The three suits were then consolidated for a hearing on a rule to show cause why a preliminary injunction should not issue. At this hearing, the facts were stipulated and, among other things, it was agreed that the corporate plaintiffs were sufficiently engaged in interstate commerce to come within the ambit and meet the jurisdictional requirements of the federal Labor Management Relations Act, 1947, 29 U.S.C.A. § 141 et seq.
The plaintiffs requested injunctive relief against the proposed investigations on the alternative theories that (1) the state statutes under which the investigations were to be conducted invaded an area pre-empted by the exclusive jurisdiction of federal law; (2) the said statutes violated certain provisions of the federal and state constitutions, and (3) the Louisiana Department of Labor was without authority to investigate alleged violations of the cited statutes. In well stated written reasons for judgment, the trial judge found that the federal Labor Management Relations Act preempted the area purported to be covered by LSA-R.S. 23:901 and 23:902, but that LSA-R.S. 23:898 was a permissible exercise of state jurisdiction. In due course, a judgment was signed issuing a preliminary writ of injunction directed to the Commissioner of Labor and his representatives, enjoining the enforcement of the subpoenas under the provisions of R.S. 23:900, 23:901 and 23:902, but denying injunctive relief in regard to investigations of possible violations of R.S. 23:898.
The defendants did not appeal nor did they answer the appeal, and further, in brief the Attorney General has conceded the unconstitutionality of LSA-R.S. 23:901 and 23:902, as found by the trial judge. Thus, these statutes are not before us for consideration, and this appeal is limited solely to the validity of LSA-R.S. 23:898 and the proposed investigations thereunder.
A composite of the specification of errors assigned by appellants appears to be:
1. The court erred in holding that LSA-R.S. 23:898 has not been pre-empted by federal law; specifically 18 U.S.C.A. § 1231 and 29 U.S.C.A. § 141 et seq.
2. The appellees have not authority to initiate investigations of possible violations of statutes which carry criminal penalties which is a usurpation of the authority of the grand juries and district attorneys of this state.
3. Alternatively, the subpoenas are unconstitutionally overbroad.
The most perplexing issue presented in this appeal is whether the jurisprudential doctrine of federal pre-emption under the Labor Management Relations Act operates to bar the State of Louisiana from enacting and enforcing a statute containing the provisions of LSA-R.S. 23:898.
LSA-R.S. 23:898, in part, provides:
"§ 898. Transportation of strikebreakers prohibited; penalty
It is unlawful to transport or cause to be transported from without the State *9 of Louisiana into this state any person who is employed or is to be employed for the purpose of obstructing or interfering by force or threats with
(1) Peaceful picketing by employees during any labor controversy affecting wages, hours, or conditions of labor; or
(2) The exercise by employees of any of the rights of self-organization or collective bargaining.
* * *."
We view San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), as one of the leading cases in this area. Therein the United States Supreme Court stated:
"Administration is more than a means of regulation; administration is regulation. We have been concerned with conflict in its broadest sense; conflict with a complex and interrelated federal scheme of law, remedy, and administration. Thus, judicial concern has necessarily focused on the nature of the activities which the States have sought to regulate, rather than on the method of regulation adopted. When the exercise of state power over a particular area of activity threatened interference with the clearly indicated policy of industrial relations, it has been judicially necessary to preclude the States from acting.However, due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. . . .Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." 359 U.S. 243-44, 79 S.Ct. 778-79. (Emphasis added) See also Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Linn v. United Plant Guard Workers of America, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966); International Union, United Automobile, Aircraft and Agricultural Implement Workers of America v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958); and Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Board, 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691 (1949).
The trial judge viewed LSA-R.S. 23:898 as fitting squarely within the local interest exceptions to the applicability of the doctrine of federal pre-emption. We agree with his determination. On its face, this statute deals with preservation of peace, order and domestic tranquillity. We can perceive no matter more clearly within the concept of an overriding state interest, or, in the Garmon language, more "deeply rooted in local feeling and responsibility. . . ."
While we find no Louisiana jurisprudence interpreting Section 898, we take note of the Florida Supreme Court decision in Perez v. Trifiletti, 74 So.2d 100 (1954), where it is said:
". . . (I)t seems settled that while states are precluded from applying their `preventive' labor law in controversies affecting interstate commerce, their power to preserve the peace remains intact even though it be invoked in connection with a labor dispute. . . . See also International Union, UAW, AFL v. Wisconsin Emp. Rel. Bd., 1949, 336 U.S. 245, 254, 69 S.Ct. 516, 93 L.Ed. 651, commonly referred to as the `Briggs-Stratton case' wherein certain types of unduly coercive conduct (of nebulous bounds) falling short of actual or threatened violence (intermittent and unannounced stoppages) was subject to state regulation." 74 So.2d at 102.
Appellants refer to a federal criminal statute, 18 U.S.C.A. § 1231, which is virtually identical to the provisions of LSA-R.S. *10 23:898. This federal statute, however, is not a part of the Labor Management Relations Act, 1947; rather it is found in that portion of the United States Code dealing with crimes. We do not perceive that the doctrine of federal preemption developed under the Labor Management Relations Act is transferrable in regard to other portions of the federal statutory law. Support for this observation is found in the rationale behind development of the pre-emption doctrine, which was strongly influenced by Congress' clear intent to vest in the National Labor Relations Board primary responsibility for interpretation and application of the Labor Management Relations Act, 1947. See: San Diego Building Trades Council v. Garmon, supra. For more mundane matters, such as punishing breaches of the peace only incidentally connected with labor relations, we know of no sound reason why the federal government and the various states may not possess concurrent jurisdiction, or why it would be fatal to otherwise valid state legislation if the wording of the state act is very similar to federal laws governing the same conduct.
These appellants next argue that the Louisiana Department of Labor lacks the authority to investigate alleged violations of LSA-R.S. 23:898, citing the absence from the questioned statute of an express grant of investigative or enforcement authority, coupled with the presence in certain other statutes collected within Title 23 of the Louisiana Revised Statutes of express grants of investigative or enforcement authority. As examples of the latter statutes, appellants cite LSA-R.S. 23:152, 23:335, 23:382, 23:531 and 23:897. The defendants, on the other hand, point to the provisions of LSA-R.S. 23:1, 23:6, 23:7 and 23:11.
LSA-R.S. 23:1 provides, in part, that the Commissioner of Labor
". . . shall have charge of the administration and enforcement of all laws, rules and regulations, which it is the duty of the department to administer and enforce, and shall direct all inspections and investigations, except as otherwise provided." (Emphasis added.)
In regard to the general powers and duties of the Commissioner, LSA-R.S. 23:6 provides that
"In addition to any other powers and duties which may be conferred upon the commissioner by law, he shall:
(1) Collect, collate, and publish statistical and other information relating to employment conditions of workers, and make public such reports as in his judgment he may deem necessary.
(2) Enforce all labor laws.
(3) Do all in his power to promote the voluntary conciliation of disputes between employers and employees to avoid the necessity of resorting to discriminations and legal proceedings in matters of employment. . . ."
LSA-R.S. 23:7 provides that
"The commissioner of labor or any duly authorized representative of the department of labor shall, for the purpose of examination, have access to and the right to copy any book, account, record, pay roll, paper or document relating to the employment of workers."
Lastly, LSA-R.S. 23:11 sets out the Commissioner's power in regard to compulsory process as follows:
"The commissioner, or any authorized representative of the department may administer oaths, certify to official acts, issue subpoenas, compel the attendance of witnesses, and the production of papers, books, accounts, documents and testimony, as in civil proceedings. Service of subpoena shall be made by the same parish officers as in civil proceedings. In case of failure of any person to comply with any order of the commissioner or any subpoena lawfully issued, or on the refusal of any witness to testify to any matter regarding which he may be lawfully *11 interrogated, it is the duty of any court of competent jurisdiction, on application of the commissioner or of any representative of the department, to compel obedience by attachment proceedings for contempt."
Appellants further contend that, to allow the Commissioner of Labor to investigate the possible violation of a statute which carries criminal penalties and which does not specifically authorize investigation and/or enforcement by the Commissioner would usurp the powers of the District Attorneys of this state, as granted to them under the Louisiana Code of Criminal Procedure and the Constitution of the State of Louisiana.
The foregoing arguments of appellants are rejected. In our view, the broad grants of power reflected in the statutes quoted above are ample justification for the investigation proposed into possible violations of LSA-R.S. 23:898. An investigation by the Commissioner of Labor in no way hinders any appropriate investigative authority from proceeding with its own investigation or other necessary action. Furthermore, a mere cursory review of the statutes above quoted leads to the conclusion that the Commissioner may legitimately conduct investigations for many purposes other than development of evidence for the enforcement of the particular statute in question.
The record of these proceedings is completely void of any evidence relating to the purpose of the proposed investigation under Section 898, and we cannot assume that the Commissioner's purpose in provoking the investigation was not a purpose clearly within the competence of the Commissioner. For the same lack of evidence, we are unable to accept appellants' related argument that an administrative subpoena should not be enforced where it is issued for the purpose of developing a criminal case; we are simply unable to conclude, from the records before us, that such purpose solely motivated the Commissioner of Labor.
Lastly, these appellants argue that the subpoena is unconstitutionally overbroad, in that it requires the production of records regarding all employees during a certain time period, rather than being limited to those persons transported from outside the State of Louisiana (which is the class of persons affected by the terms of Section 898).
In its present posture, it would be inappropriate for us to speculate as to the purpose the records of appellants would serve the Department in their investigations. Even though the records sought include more than those persons allegedly involved within the terms of R.S. 23:898, under R.S. 23:6, we find the subpoenas are not unconstitutionally overbroad. Further, the pleadings do not address this issue.
For the foregoing reasons, the judgment appealed is affirmed, at appellants' cost.
Affirmed.
NOTES
[1] Consolidated for hearing in this court were the companion cases of Reynolds et al. v. State of Louisiana, Dept. of Labor et al., 313 So.2d 11, and Viator et al. v. State of Louisiana, Dept. of Labor et al, 313 So.2d 12. The issues in all these cases are identical. Separate judgment will be rendered in each case.